UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT D. MANTZ, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Civil Action No. 09-12010-JLT |
| | * |
| WELLS FARGO BANK, N.A., et al., | * |
| | * |
| Defendants. | * |

MEMORANDUM

January 19, 2011

TAURO, J.

I. Introduction

This action arises out of a refinance loan that Defendant Option One Mortgage Corporation ("Option One") extended to Plaintiff, Robert D. Mantz, and his wife, Jamie C. Mantz, on November 11, 2006 ("the loan"). Plaintiff's Complaint alleges violations of the Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA"), the Credit Repair Organizations Act ("CROA"), the Racketeer Influenced and Organizations Act ("RICO"), and fraud and misrepresentation.[1] Plaintiff seeks rescission pursuant to TILA; a declaration of this court that all documents used by Defendants in forming a contract with Plaintiff "be deemed null and void"; actual damages; statutory damages; punitive damages; and costs.[2]

Presently at issue are Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and American Home Mortgage Servicing Incorporated's ("AHMSI's") Motion to Dismiss [#10]; Defendant

---

[1] Compl., 11, 13, 16, 18, 19, 22 [#1].

[2] Compl., 13, 15–16, 18, 19, 22, 23 [#1].

Option One's Motion to Dismiss [#18]; Plaintiff's Cross Motion for Summary Judgment against Defendants Wells Fargo and AHSMI [#13]; and Plaintiff's Cross Motion for Summary Judgment against Defendant Option One [#20]. For the following reasons, Defendants Wells Fargo and AHMSI's Motion to Dismiss is ALLOWED; Defendant Option One's Motion to Dismiss is ALLOWED; and Plaintiff's Cross-Motions for Summary Judgment are DENIED.

II. Background

   A. Factual Background[3]

In 2000, Plaintiff purchased a home in Medfield, Massachusetts.[4] In 2006, Plaintiff had a mortgage home loan through EMC Mortgage Corporation ("EMC") with monthly payments of $2739 per month.[5] A 2006 licensed appraisal indicated the value of his home to be $497,500.[6] In 2006, at the time of the credit transaction in question, Plaintiff owed EMC $232,300 for the property, but he was unemployed and had no source of income.[7] The Mantzes lived on a single fixed income from Jamie Mantz's job as an ophthalmic medical technician.[8]

On or about September 9, 2006, as part of a Chapter 13 bankruptcy plan, Plaintiff

---

[3] Because the issues analyzed here arise in the context of two Motions to Dismiss, this court presents the facts as they are related in Plaintiff's Complaint, Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008), and construes those facts in the light most favorable to Plaintiff, see Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)).

[4] Compl. ¶ 19 [#1].

[5] Compl. ¶ 20 [#1].

[6] Compl. ¶ 23 [#1].

[7] Compl. ¶ 24 [#1].

[8] Compl. ¶ 28 [#1].

2

submitted a loan refinance application to Sunset Mortgage Corporation ("Sunset").[9] Sunset's representative, "Miss Uniacke,"[10] indicated that Sunset and Defendant Option One agreed that Plaintiff and his wife should increase the amount of their prior home loan mortgage by approximately $100,000.[11] At Sunset's direction, Plaintiff listed himself as the "co-borrower" and his wife as the "borrower."[12] Several documents clearly defined the Mantzes' income level and Plaintiff never tried to conceal or inflate their income level.[13]

Plaintiff has a high school education and had indicated repeatedly to Uniacke that he was not familiar with the procedures surrounding refinancing.[14] Plaintiff told Defendants that he was putting complete trust in them.[15] Defendants never discussed or disclosed to Plaintiff the Yield Spread Premium prior to settlement.[16] Defendants also never discussed "stated income" prior to settlement and Plaintiff did not know the meaning of the phrase "stated income" at the time that he signed the document.[17] In fact, Plaintiff assumed that he was confirming the information on the

---

[9] Compl. ¶¶ 21, 26 [#1].

[10] Uniacke acted as the representative, broker, and chief loan underwriter of consumer credit transaction #0022553168. Compl. ¶ 31 [#1]. Plaintiff believes that Uniacke was a principal or partial owner of Sunset. Id.

[11] Compl. ¶ 31 [#1].

[12] Compl. ¶¶ 27, 29 [#1].

[13] Compl. ¶¶ 29, 30 [#1].

[14] Compl. ¶ 32 [#1].

[15] Compl. ¶ 32 [#1].

[16] Compl. ¶ 34 [#1].

[17] Compl. ¶ 35 [#1].

income documents submitted with the refinance application.[18] To this day, Plaintiff has no knowledge of the level of income that Defendants misrepresented on his application to make the home loan refinance appear suitable for approval.[19]

Settlement proceedings occurred on November 15, 2006, and Plaintiff's home loan refinance transaction was assigned credit transaction number 0022553168.[20] Plaintiff alleges that the documents signed on November 15, 2006 are void because they were procured through Defendants' fraud and misrepresentation.[21] Plaintiff further alleges that he only signed the documents because he might have lost his home if the refinance transaction did not occur.[22]

Since November 2006, Defendant Option One has failed to supply Plaintiff with required monthly billing statements.[23] In March 2007, Defendant AHMSI became the servicer of the loan and also failed to submit any scheduled monthly billing statements.[24] In addition, Plaintiff submitted many Qualified Written Requests ("QWRs") to Defendants to request specific information related to the true cost of the credit, but Defendants have failed to answer the requests.[25]

On September 18, 2008, Plaintiff sent proper notification that he was exercising his

---

[18] Compl. ¶ 35 [#1].

[19] Compl. ¶ 36 [#1].

[20] Compl. ¶ 38 [#1].

[21] Compl. ¶ 39 [#1].

[22] Compl. ¶ 40 [#1].

[23] Compl. ¶ 41 [#1].

[24] Compl. ¶ 42 [#1].

[25] Compl. ¶ 44 [#1].

extended right-to-cancel on credit transaction number 0022553168.[26] On September 22, 2008, Defendants Wells Fargo and Option One received Plaintiff's notice to cancel/rescind.[27] To date, Defendants have received four separate letters of notification that Plaintiff has exercised his extended right-to-cancel.[28]

Plaintiff alleges that Defendants violated their fiduciary duties to Plaintiff because it was clear that Plaintiff would not be able to sustain the monthly home loan payment.[29]

B.  Procedural Background

Plaintiff filed his Complaint in this case on November 17, 2009.

Approximately a year and a half earlier, on June 27, 2008, Plaintiff and his wife filed a lawsuit against Defendant Wells Fargo in Massachusetts Superior Court, Norfolk County.[30] Plaintiff asserted violations of TILA and RESPA and sought rescission of the mortgage loan.[31] Plaintiff also alleged that Wells Fargo "participated in unscrupulous predatory home loan practices with the intent to dispossess the plaintiffs of their home and defraud them of the substantial equity therein."[32]

---

[26] Compl. ¶ 45 [#1].

[27] Compl. ¶ 45 [#1].

[28] Compl. ¶ 46 [#1].

[29] Compl. ¶ 47 [#1].  For example, the scheduled home loan payments alone were more than fifty-five percent of Plaintiff's debt-to-income ratio at the time of approval and settlement. Compl. ¶ 47 [#1].

[30] See Def. Option One Mortgage Corporation's Addendum Mem. Supp. Mot. Dismiss, Ex. A [#27] [hereinafter Option One Addendum].

[31] See Option One Addendum, Ex. A [#27].

[32] Option One Addendum, Ex. A [#27].

5

In the state court case, Plaintiff refused to answer interrogatories concerning his rescission claim. Defendant Wells Fargo filed a Motion to Compel Plaintiffs to Produce Further Answers to Interrogatories,[33] which the Superior Court allowed.[34]

Plaintiff never provided supplemental answers to the interrogatories, and on October 18, 2010, the Superior Court dismissed Plaintiff's case with prejudice.[35]

III. Discussion

    A. Counts One and Two: TILA

        1. Res Judicata

The doctrine of res judicata provides that federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged."[36] The elements necessary to establish res judicata and thereby preclude relitigation are "'[1] identity of cause of action and issues, [2] the same parties, and [3] judgment on the merits by a court of competent jurisdiction.'"[37]

Regarding the first element, the doctrine of res judicata applies to claims that derive from

---

[33] Def. Wells Fargo Bank, N.A.'s Supplemental Mem. Supp. Its Mot. Dismiss & Opp'n Pls.' Cross Mot. Summ. J., Ex. C [#26] [hereinafter Wells Fargo Supplemental Mem.].

[34] See Wells Fargo Supplemental Mem., Ex. D [#26].

[35] See Wells Fargo Supplemental Mem., Ex. I [#26].

[36] Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466 (1982); see Cruz v. Melecio, 204 F.3d 14, 18 (1st Cir. 2000).

[37] Almeida v. Travelers Ins. Co., 383 Mass. 226, 229 (1981) (quoting Franklin v. N. Weymouth Coop. Bank, 283 Mass. 275, 280 (1933)).

the "'same transaction or series of connected transactions.'"[38] The doctrine of res judicata applies even if a party "is prepared in a second action to present different evidence or legal theories to support his claim, or seeks different remedies."[39] With respect to the second element, the doctrine of res judicata may still apply even if the parties in the two lawsuits are not the same, as long as the non-similar party in the second lawsuit is in privity with a party in the first lawsuit.[40] The requirement of privity is met if the party asserting res judicata has succeeded to the interest in the property of a party that prevailed in a prior action.[41] Finally, regarding the third element, a judgment of dismissal "for failure to answer interrogatories . . . operate[s] with full preclusive effect."[42] Similarly, a dismissal "with prejudice" constitutes "'an adjudication on the merits as fully and completely as if the order had been entered after trial.'"[43]

Here, the doctrine of res judicata bars relitigation of Counts One and Two against Defendant Wells Fargo. First, Counts One and Two assert the same cause of action as the fifth count in the state court action because the claims in both cases arise out of the same loan, and

---

[38] Dawe v. Capital One Bank, 456 F. Supp. 2d 236, 240 (D. Mass. 2006) (quoting Saint Louis v. Baystate Med. Ctr., Inc., 30 Mass. App. Ct. 393, 399 (1991)).

[39] Heacock v. Heacock, 402 Mass. 21, 24 (1988); Charlette v. Charlette Bros. Foundry, Inc., 59 Mass. App. Ct. 34, 44 (2003).

[40] See Kobrin v. Bd. of Registration in Med., 444 Mass. 837, 843 (2005).

[41] See Diep Bui v. Ha T. Ma, 62 Mass. App. Ct. 553, 561–62 (2004) ("'[A] successor in interest of property that is the subject of a pending action to which his transferor is a party is bound by and entitled to the benefits of the rules of res judicata to the same extent as his transferor . . . .'" (quoting Restatement (Second) of Judgments § 44 (1982))).

[42] Porter v. Ackerman, 380 Mass. 936, 936 (1980).

[43] Bagley v. Moxley, 407 Mass. 633, 637 (1990) (quoting Boyd v. Jamaica Plain Co-Operative Bank, 7 Mass. App. Ct. 153, 157 n.8 (1979)).

they seek the same relief (rescission) under TILA.[44] That Plaintiff has articulated allegations and legal theories here that do not appear in his state court complaint is immaterial for res judicata purposes.[45] Second, the parties in the state court action (Plaintiff, his wife, and Defendant Wells Fargo) are the same as the parties in this action. Third, the Superior Court properly had jurisdiction over the state court action and issued a judgment on the merits. The Superior Court's dismissal "with prejudice" for failure to answer interrogatories has full preclusive effect.[46]

Counts One and Two must also be dismissed against Defendant Option One. The analysis of the first and third res judicata elements remain the same for Plaintiff's claims against Defendant Option One. With respect to the second element, Defendant Option One, although not a party to the state case, was in privity with Defendant Wells Fargo. Defendant Option One originated the loan at issue and assigned the mortgage to Wells Fargo, which puts the two Parties in privity.[47]

### 2. TILA Statute of Limitations

Counts One and Two must also be dismissed against Defendant AHMSI because the claims are time-barred by the applicable statutes of limitations. Under TILA, claims for damages must be brought within one year from the date of the alleged violation.[48] Additionally, TILA provides a borrower who refinances a mortgage on his or her principal dwelling a limited right to

---

[44] See Option One Addendum, Ex. A [#27] (asserting Count Five in the state court action "for violations of The Truth In Lending Act [sic] (TILA) regulations"); Dawe, 456 F. Supp. 2d at 240.

[45] See Heacock, 402 Mass. at 24; Charlette, 59 Mass. App. Ct. at 44.

[46] See Bagley, 407 Mass. at 637; Porter, 380 Mass. at 936.

[47] See Option One Addendum, Ex. D [#27]; see also Diep Bui, 62 Mass. App. Ct. at 561–62.

[48] 15 U.S.C. § 1640(e); Belini v. Wash. Mut. Bank, FA, 412 F.3d 17, 26 (1st Cir. 2005).

8

rescind the transaction.[49] If the borrower does not receive adequate notice of the statutory right to rescind, the rescission period is extended for three years from the date of the closing.[50] This three-year period is a rigid deadline.[51]

Here, Plaintiff's claims under Counts One and Two are time-barred. The loan closing occurred on November 15, 2006.[52] Defendants received the right of rescission notice on September 22, 2008, so the statute of limitations for Count Two began to run twenty days later, on October 16, 2008.[53] Plaintiff's claim for damages under Count Two thus expired on October 16, 2009. Regarding Count One, viewing the evidence in the light most favorable to Plaintiff and assuming that Plaintiff did not receive the required TILA disclosures, Plaintiff's claim for damages expired on November 15, 2007 and his rescission right expired on November 15, 2009. Because Plaintiff did not file this action until November 17, 2009, his claims under TILA had expired.

B. Count Three: RESPA

---

[49] 15 U.S.C. § 1635(a) (explaining that such a borrower "shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms . . . , whichever is later").

[50] 12 C.F.R. § 226.15(a)(3).

[51] See 15 U.S.C. § 1635(f) ("An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this chapter have not been delivered to the obligor . . . ."); Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998) ("[Section] 1635(f) completely extinguishes the right of rescission at the end of the 3-year period.").

[52] Compl. ¶ 38 [#1].

[53] See Belini, 412 F.3d at 26 ("The 'date of the occurrence of the violation,' here, is at the earliest the date that [defendant] received [plaintiffs'] notice of rescission; in truth, the date of that occurrence is likely twenty days later, when [defendant's] time for responding to that notice had expired." (citing Smith v. Fid. Consumer Disc. Co., 898 F.2d 896, 903 (3d Cir. 1989))).

9

1. Res Judicata

As described above, Count Three must be dismissed against Defendants Wells Fargo and Option One as a matter of res judicata. The analysis of all elements remains the same, except that Count Three of this action and the seventh count of the state court action seek the same relief under RESPA.[54]

2. RESPA Statute of Limitations

Count Three must also be dismissed as against Defendant AHMSI. Claims under RESPA must be brought within one year of the date of the occurrence of the violation of Section 2607.[55] Plaintiff's claim under Section 2607 expired one year from the date of the loan, November 15, 2007. Plaintiff's claim therefore expired on November 15, 2009, and Plaintiff did not file this action until November 17, 2009.

3. 12 U.S.C. § 2605

Plaintiff also asserts a claim against Defendant AHMSI under Section 2605 of RESPA. Section 2605 requires mortgage loan servicers who receive a "qualified written request" ("QWR") for action or information from a borrower to respond and, if necessary, to act within statutorily mandated periods of time.[56] RESPA defines a QWR as

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the

---

[54] See Option One Addendum, Ex. A [#27] (asserting Count Seven in the state court action "for violations of the Real Estate Settlement Procedures Act (RESPA) regulations").

[55] 12 U.S.C. § 2614.

[56] Id. § 2605(e)(1)–(2).

10

borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.[57]

Some courts have held that a plaintiff who alleges a violation of this provision must assert to whom the request was made, when the request was made, how the defendant failed to respond to the request, whether the statutory period for responding has elapsed, and whether the defendant meets the statutory definition of a servicer.[58] Other courts have held that "alleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages."[59] Because the First Circuit has not opined on pleading requirements under Section 2605, this court adopts the abovementioned requirements.

Here, Plaintiff has not pled sufficient facts to support his claim under Section 2605 of RESPA. Plaintiff alleges that Defendant AHMSI violated Section 2605 by "failing to acknowledge Qualified Written Requests within the required time allowed and/or failing to specifically respond to the specific requests denoted in the aforementioned Qualified Written Requests."[60] But Plaintiff does not plead his claim under Section 2605 with any greater specificity. Indeed, Plaintiff does not specify when he sent the QWRs, nor does he claim that the

---

[57] Id. § 2606(e)(1)(B).

[58] See, e.g., Delino v. Platinum Cmty. Bank, 628 F. Supp. 2d 1226, 1231–32 (S.D. Cal. 2009).

[59] Hutchinson v. Del. Sav. Bank FSB, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) (citing 12 U.S.C. § 2605(f)(1)(A); Cortez v. Keystone Bank, No. 98-2457, 2000 U.S. Dist. LEXIS 5705, at *40 (E.D. Pa. May 2, 2000)); see, e.g., Reynoso v. Paul Fin., LLC, No. 09-3225, 2009 WL 3833298, at *7 (N.D. Cal. Nov. 16, 2009).

[60] Compl. ¶ 71 [#1].

alleged failure to respond to the QWRs resulted in actual damages. For these reasons, Plaintiff's claim against Defendant AHMSI under Section 2605 fails to state a claim upon which relief may be granted and must also be dismissed.[61]

   C.   Count Four: CROA

Count Four, Plaintiff's claim under CROA, also fails to state a claim upon which relief may be granted.[62] CROA governs transactions that involve credit repair organizations.[63] Pursuant to CROA, the term "credit repair organization"

> means any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of—
>
> (i) improving any consumer's credit record, credit history, or credit rating; or
>
> (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (I); and
>
> . . . does not include—
> . . .
> (ii) any creditor (as defined in section 103 of the Truth in Lending Act . . .), with respect to any consumer, to the extent the creditor is assisting the consumer to restructure any debt owed by the consumer to the creditor.[64]

Section 103 of TILA defines a "creditor" as

> a person who both (1) regularly extends, whether in connection with loans, sales of

---

[61] See Fed. R. Civ. P. 12(b)(6).

[62] See id.

[63] See 15 U.S.C. § 1679(b).

[64] Id. § 1679a(3); see also Tejada v. Countrywide Home Loans, Inc., No. 08-61992, 2009 WL 2046141, at *3 (S.D. Fla. 2009) (citing Hillis v. Equifax Consumer Servs., Inc., 237 F.R.D. 491, 511 (N.D. Ga. 2006)).

property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.[65]

Here, Count Four must fail because none of the Defendants fall within the definition of a "credit repair organization," even under Plaintiff's description of each Defendant.[66] Moreover, Defendants all fall within the statutory exception for "creditors."[67]

### D. Count Five: Fraud and Misrepresentation

As described above, Count Five must be dismissed as against Defendants Wells Fargo and Option One as a matter of res judicata. Although Plaintiff's state-court complaint did not allege "fraud and misrepresentation" as a specific count, Plaintiff's claim for fraud and misrepresentation here relies on the "'same transaction or series of connected transactions'"[68] as his state-court TILA and RESPA claims.

Count Five must also be dismissed as against Defendant AHMSI because the claim is time-barred. Massachusetts law provides a three-year statute of limitations for "actions of tort, actions of contract to recover for personal injuries, and actions of replevin."[69] This statute of limitations also applies to claims of fraud and misrepresentation.[70]

---

[65] 15 U.S.C. § 1602(g).

[66] See Cmpl. ¶¶ 13, 15, 17 [#1].

[67] See Cmpl. ¶¶ 13, 15, 17 [#1].

[68] Dawe, 456 F. Supp. 2d at 240 (quoting Saint Louis, 30 Mass. App. Ct. at 399).

[69] Mass. Gen. Laws ch. 260 § 2A.

[70] See, e.g., Albrecht v. Clifford, 436 Mass. 706, 71–16 (2002).

This statute of limitations begins to run "'when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that she has been harmed or may have been harmed by the defendant's conduct.'"[71] In the context of mortgage loan transactions, the statute of limitations on fraud claims begins to run on the date of the closing, as potential plaintiffs are on notice for fraud when they sign loan documents.[72]

Here, the three-year statute of limitations applies to Plaintiff's fraud and misrepresentation claim. As the loan transaction occurred on November 15, 2006, Plaintiff was on notice on that day of any alleged fraud or misrepresentation.[73] For that reason, Plaintiff's fraud and misrepresentation claimed had expired by November 17, 2009, and Count Five must be dismissed as against Defendant AHMSI.

E.     Count Six: RICO

Count Six, which alleges a violation of RICO, must be dismissed for failing to allege the requisite elements of a RICO violation. To state a claim for a civil RICO violation, "a plaintiff must allege each of the four elements required by the statute: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"[74] A plaintiff must allege each of these elements

---

[71] Epstein v. C.R. Bard, Inc., 460 F.3d 183, 187 (1st Cir. 2006) (quoting Bowen v. Eli Lilly & Co., 408 Mass. 204, 205 (1990)).

[72] See Salois v. Dime Sav. Bank, FSB, 128 F.3d 20, 26 (1st Cir. 1997) (citing Salois v. Dime Sav. Bank, 1996 U.S. Dist. LEXIS 21901, at *14 (D. Mass. Nov. 13, 1996)); see also id. at 26 n.10 ("[U]nder Massachusetts law, 'one who signs a writing that is designed to serve as a legal document . . . is presumed to know its contents.'" (omission in original) (internal citations omitted)).

[73] See Salois, 128 F.3d at 26.

[74] Feinstein v. Resolution Trust Corp., 942 F.2d 34, 41 (1st Cir. 1991) (citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)); see 18 U.S.C. § 1962.

14

with particularity.[75]

An "enterprise" under RICO consists of "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."[76] A "pattern" under RICO "requires at least two acts of racketeering activity,"[77] and those acts must be "both 'related' and 'amount to or pose a threat of continued criminal activity.'"[78] Finally, "racketeering activity" can refer to any of a number of activities, including mail fraud.[79]

Here, Plaintiff has not properly pled the alleged RICO violation. First, Plaintiff has not pled "enterprise" among Defendants. In the Complaint, Plaintiff explains that Defendant Option One originated the note and then assigned it to Defendant Wells Fargo, and Defendant AHMSI is the current servicer of the note.[80] Plaintiff does not allege that either Defendant Wells Fargo or Defendant AHMSI was involved in the origination of the note. Accordingly, Plaintiff has not pled

---

[75] See N. Bridge Assocs., Inc. v. Boldt, 274 F.3d 38, 43 (1st Cir. 2001) ("'It is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave the identification of predicate acts to the time of trial.'" (quoting Feinstein, 942 F.2d at 42)); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); see also Ahmed v. Rosenblatt, 118 F.3d 886, 889 (1st Cir. 1997) ("Failure to plead predicate acts adequately is enough to sink [a] RICO claim.").

[76] 18 U.S.C. § 1961(4).

[77] Id. § 1961(5); see id. § 1962.

[78] Schultz v. Rhode Island Hosp. Trust Nat'l Bank, N.A., 94 F.3d 721, 731 (1st Cir. 1996) ("In other words, a RICO pattern consists of 'continuity plus relationship.'" (quoting Sousa v. BP Oil, Inc., 1995 U.S. Dist. LEXIS 20961, 1995 WL 842003, at *13 (D. Mass. 1995))).

[79] See 18 U.S.C. § 1961(1) ("'[R]acketeering activity' means . . . any act which is indictable under . . . [18 U.S.C. §] 1341 (relating to mail fraud) . . . .").

[80] See Compl. ¶¶ 13, 15, 17 [#1].

15

facts sufficient to show an enterprise among Defendants.

Second, Plaintiff's Complaint does not establish a "pattern," as his entire claim is based on one loan transaction[81] rather than any type of related or continuous criminal activity.

Finally, Plaintiff has failed to properly plead that Defendants used the mails in furtherance of the alleged fraud. Although the Complaint alleges that Defendants "communicated and transmitted documents with each other through means using Telephone, Facsimiles and the United States Postal Service,"[82] Plaintiff fails to plead the time, place, or content of these alleged activities.[83]

Accordingly, Plaintiff's RICO claim against all Defendants fails to meet the statutorily required elements and must be dismissed.

### F. Plaintiff's Cross Motions for Summary Judgment

Finally, because this court dismisses all counts of Plaintiff's Complaint, Plaintiff's Cross Motions for Summary Judgment against each Defendant must be denied.

## IV. Conclusion

For the foregoing reasons, Defendants Wells Fargo and AHMSI's Motion to Dismiss [#10] is ALLOWED; Defendant Option One's Motion to Dismiss [#18] is ALLOWED; and Plaintiff's Cross Motions for Summary Judgment [#13, 20] are DENIED.

AN ORDER HAS ISSUED.

                                            /s/ Joseph L. Tauro

---

[81] See Compl. ¶¶ 87–89 [#1].

[82] See Compl. ¶ 88 [#1].

[83] See Boldt, 274 F.3d at 43.

United States District Judge